PEOPLE *v.* SCHIDDEL.

1. INTOXICATING LIQUORS—CRIMINAL LAW—ADMISSIONS—EVIDENCE
   —SUFFICIENCY.
   In a prosecution for violation of the liquor law, where
   defendant admitted the sale of two pints of whisky as
   charged, but claimed as a defense that he did it for the
   purpose of securing evidence against the person from whom
   he procured it, although he admitted that the persons
   to whom he sold it had no knowledge of such intent, the
   trial court properly instructed the jury that if they be-
   lieved the testimony of the witnesses to whom the sale
   was made, and that the admissions of defendant were true,
   it was their duty to convict.

2. SAME—TRIAL—INSTRUCTION—GOOD FAITH—INTENT.
   Defendant was not entitled to an instruction that if the
   admitted sale was made in good faith for the purpose
   of detecting and exposing another as a violator of the
   law, defendant should be acquitted, since intent is not
   an element of the offense.

3. SAME—SPECIAL QUESTIONS INAPPLICABLE IN CRIMINAL CASE.
   Since the statute (3 Comp. Laws 1915, § 12611) provid-
   ing for the submission of special questions to the jury
   has application only in the trial of civil cases, the trial
   court was in error in submitting to the jury the special
   question as to whether defendant, in making the admitted
   sale, acted in good faith for the purpose of detecting and
   exposing a violator of the law.

Exceptions before judgment from Jackson; Parkin-
son (James A.), J.   Submitted May 4, 1922.   (Docket
No. 141.)   Decided June 5, 1922.

Henry Schiddel was convicted of violating the liquor
law.   Affirmed.

*James J. Noon* and *John F. Henigan,* for appellant.

*M. Grove Hatch,* Prosecuting Attorney, and *Arthur W. Wiggins,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendant was convicted of selling two pints of whisky to Claire Stoddard and George Snedicor at the city of Jackson on March 15, 1921, and seeks review thereof on exceptions before sentence.

Stoddard and Snedicor were officers charged with the enforcement of the prohibition law. They registered at defendant's hotel. Snedicor, who was somewhat well known, assumed the name of Davis. Defendant, at Snedicor's request, brought two pint bottles of whisky to a room in the hotel in which both Stoddard and Snedicor were, for which they paid him $10. Defendant was a witness in his own behalf. On direct-examination he testified that Snedicor asked him, "Can you get me any liquor?" and he said "No. There was a man sitting there on the outside, his name is Jack Wilson, and he jumped up and said he could get him a quart for $10." That later—

"Mr. Snedicor came in, and he went to Mr. Stoddard's room; this Jack Wilson was hanging around and I was stalling him along, and I asked him where he got his liquor from. I asked Jack Wilson. I took him to 105 room and talked with him there; I asked him where he got his liquor from and 'he said he got it from Detroit, and I asked him how he got it in and he said, 'Why, they send it here in a near-beer barrel.' I said, 'In a near-beer barrel?' He said, 'Yes,' and then he said to me, 'What are you trying to do, you trying to hang me or something?' and I said, 'No, I am not.' So I took the liquor, the two pints of liquor and took it into Mr. Stoddard's room and handed them to Mr. Stoddard and took the $10 and gave it to Mr. Wilson. Wilson was standing on the outside of the door when I gave him the money."

He further testified that he made the sale for the purpose of getting evidence against Wilson and pursuant to an arrangement he had made with Van Loomis, an inspector of the State food and drug department. On cross-examination he admitted that he did not inform either Stoddard or Snedicor that he got the liquor from Wilson.

Defendant's counsel insisted on their right to go to the jury on the question of his "good faith or lack of it" in making the sale. The court instructed the jury that if they believed the testimony of Stoddard and Snedicor and that the admissions of the defendant were true, it was their duty to convict defendant. The jury retired and soon returned with a verdict of guilty. As a result of the discussion with defendant's counsel on the question of good faith, the trial court prepared the following question:

"In making the admitted sale to Stoddard and Snedicor, was Schiddel acting in good faith for the purpose of detecting and exposing one Jack Wilson as a violator of the prohibition law?"

and instructed the foreman to poll the jury on the question, and if they convicted the defendant, advise the court of the jurors' answers thereto. This was done, the foreman at the time of announcing the verdict saying that "two answer 'Yes,' and ten answer 'No.'" Defendant's counsel, while submitting no authorities, argue strenuously that the jury should have been instructed that if the sale was made by defendant for the purpose indicated in the special question they should acquit the defendant.

There would be merit in defendant's claim if based on an arrangement claimed to have been made with Stoddard and Snedicor, or either of them. He admits that so far as they were concerned he sold them two pint bottles of whisky for which they paid him $10 and that they had no knowledge as to where or

of whom he procured it.    This was a clear violation of
the law on his part.    He admits that he could have pro-
cured the evidence against Wilson quite as effectively
without the delivery of the liquor.    The statute ab-
solutely prohibits the sale.    The intent with which it
was made, while it may affect the sentence imposed,
is not involved as an element of the crime.    An in-
teresting discussion of the question presented will be
found in *People* v. *Roby*, 52 Mich. 577 (50 Am. Rep.
270).    The court should not have submitted the special
question to the jury.    The statute providing therefor
(3 Comp. Laws 1915, § 12611) has application only in
the trial of civil cases.

The other assignments, while not discussed, have
had consideration.    We find no reversible error in the
record.    The court may proceed to sentence.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK,
BIRD, MOORE, and STEERE, JJ., concurred.